**UNITED STATES DISTRICT COURT**
**FOR THE DISTICT OF COLUMBIA**

**MARENKO NEDELKOVSKI,**
**MARJA NEDELKOVSKA,**
**ANGELA NEDELKOVSKA, and**
**DANIELA NEDELKOVSKA,**

750 Inkster Rd., Dearborn Heights,
MI 48127

Plaintiffs,

against

**UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES**
**111 Massachusetts** Ave., **NW**
**MS 2260**
**Washington, DC 20529-2260**

Defendant.

Case No.:

COMPLANT

1.This complaint is brought by plaintiffs, Marenko Nedelkovski, Marja Nedelkovska, Angela Nedelkovska, and Daniela Nedelkovska, (The Nedelkovskis) against defendant, United States Citizenship and Immigration Services (USCIS), for judicial review under the Administrative Procedure Act of USCIS's decisions in File No. WAC1690207635, dated May 28, 2016, denying plaintiff's applications for change of nonimmigrant status to, in the case of Marenko Nedelkovski, F-1 nonimmigrant student status and, in the case of the other plaintiffs, to F-2 nonimmigrant student dependent status.

2. As will be shown, these applications were denied for reason that is not only directly contrary to the plain language of the relevant regulations, but also represented an abrupt and unannounced change of USCIS policy which the plaintiffs had no reason to anticipate and were deeply prejudiced by.

3. This being a civil action against the United States arising under the Immigration and Nationality Act, 8 U.S.C. § 1101 et. seq., and the Administrative Procedure Act, 5 U.S.C. § 701 et seq., both laws of the United States, original jurisdiction over this matter is vested in this Court by 28 U.S.C. § 1331.

4. Marenko Nedelkovski is a citizen and resident of Bulgaria, as is his wife, Marja

Nedelkovska, and his minor children, Angela Nedelkovska, and Daniela Nedelkovska, all of whom were lawfully admitted to the United States as visitors for pleasure, and are now temporarily present in Wayne County, Michigan.

5. The United States Citizenship and Immigration Services (USCIS) is an agency of the United States residing in the District of Columbia. Further a substantial part of the events or omissions giving rise to the claim contained herein occurred within the District of Columbia, as this action arises out of a decision apparently made at a national level within the central headquarters of the USCIS , that is the abrupt and unannounced policy of disregarding the plain language of USCIS regulations in adjudicating applications for change of nonimmigrant status to F-1 and F-2.

6. Therefore venue is properly vested in this Court by 28 U.S.C. § 1391(e)(1)(A) and (B).

## STATEMENT OF RELEVANT FACTS

7. On June 15, 2015, the plaintiffs were all admitted to the United States until December 14, 2015, as a visitors for pleasure ("B-2").

8. On December 14, 2015, Marenko Nedelkovski applied for change of nonimmigrant status to F-1 and applied for F-2 status for the other plaintiffs.

9. This application was supported in material part by a Form I-20, "Certificate of Eligibility for Nonimmigrant Student Status", issued by Language Center International, indicating that Marenko Nedelkovski had been admitted to study at that institution with a "program start date" of January 4, 2016.

10. However, on May 28, 2016, the USCIS issued a decision denying this application because Mr. Nedelkovski supposedly "cannot maintain a valid nonimmigrant status up to 30 days before the program start date and (so) are not eligible for the requested change of status." (parenthetical material added for clarity).

11. 8 C.F.R. 214.2(f)(5) states, in pertinent part:

General . . . An F-1 student may be admitted for a period up to 30 days before the indicated report date or program start date listed on Form I-20 . . .

12. Thereafter, Mr. Nedelkovski filed a motion to reconsider the USCIS's decision, pointing out in relevant part that:

a. We have included a copy of Applicant's I-20 as well as the I-20 of his dependents clearly demonstrating that his program start date was originally January

4, 2016. A start date that is clearly within 30 days of the expiration of his "B" nonimmigrant status on December 14, 2015.

b. It is clear that the decision denying Mr. Nedelkovski's 1-539 Application to Change Status was one that was made in error and we ask that upon consideration of this motion, his request to change status to that of an F-1 Student is granted and he be allowed to begin his program.

13. Nevertheless, the USCIS denied his motion on December 13, 2016, in File No. WAC169059770, because, among things, “9 FAM 4112.5-4-(B) states that the SEVIS record is the definitive record of student status and visa eligibility.

14. Furthermore, 9 FAM 402.5-5(D) (1) (c) states that "if the Form [I-20 or DS-2019] indicates an unrealizable program start date...you must verify that the record is correct in SEVIS."

a. The information on the Form I-20 that you submitted showed a program start date that not only was 21 days after the filing of your Form 1-539, but also had passed at the time your application was adjudicated. As your SEVIS Form I-20 indicated an unrealizable program start date, USCIS must verify the information is correct in SEVIS. Therefore, your SEVIS record was checked to verify the information. Your SEVIS record indicated your F-1 program start date was deferred to May 02, 2016, and the deferred program start date was used to determine your

eligibility.

15. Accordingly, USCIS denied Mr. Nedelkovski's motion to reconsider

## COUNT I

16. 5 U.S.C. § 706 provides in relevant part that:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall-- hold unlawful and set aside agency action, findings, and conclusions found to be--

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

17. The USCIS's decision of May 28, 2016 denying the plaintiffs' applications for change of nonimmigrant status (the decision) was not in accordance with law in that it was premised upon Mr. Nedelkovski's program start date as set forth in the SEVIS system rather than on form I-20 as provided by 8 C.F.R. § 214.2(f)(5) (January 4, 2016).

18. The only explanation that the USCIS provided for disregarding the plain language of the regulations is unquestionably insufficient.

19. The USCIS, in denying Mr. Nedelkovski's motion to reconsider the decision, attempted to justify replacing the program start date contained on Mr. Nedelkovski's form I-20 with that of SEVIS solely upon the basis of provisions of the Foreign Affairs Manual.

20. However, the Foreign Affairs Manual is issued by the Department of State, not the Department of Homeland Security. Scales v. INS, 232 F.3d 1159, 1165 (9th Cir. 2000). There is no rule, in Auer v. Robbins, 519 U.S. 452 (1997) or elsewhere, that encourages or compels courts to defer to an agency's interpretation of a different agency's regulations, L.D.G. v. Holder, 744 F.3d 1022, 1029 (7th Cir. 2014).

21. But even if it was the USCIS's own interpretation which the California Service Center director relied upon in denying the plaintiffs' application, and not that of the Department of State, this would still be insufficient to override the plain language of 8 C.F.R. § 214.2(f)(5) referring to the program start date on Mr. Nedelovski's form I-20, and not in SEVIS. A court does not defer to the administrative construction of the regulation if that construction "is plainly erroneous or inconsistent with the regulation." Bowles v. Seminole Rock Co., 325 U.S. 410, 414, 65 S. Ct. 1215, 89 L. Ed. 1700 (1945). Deference "is warranted only when the language of the regulation is ambiguous." Christensen v. Harris County,

529 U.S. 576, 588, 120 S. Ct. 1655, 146 L. Ed. 2d 621 (2000). There is nothing ambiguous about 8 C.F.R. § 214.2(f)(5).

22. The purpose of the regulations, like statutory provisions, is evidenced by the words chosen by the Attorney General (or, where applicable, the Secretary of Homeland Security). See Matter of Artigas, 23 I&N Dec. 99, 100 (BIA 2001). "This Board and the Immigration Judges 'must give effect to the unambiguously expressed intent' of the Attorney General." Id. (quoting Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984)).

23. Therefore Mr. Nedelovski, whose B-2 status did not expire until December 14, 2015, well within 30 days of the January 4, 2016 program start date indicated on him form I-20, was qualified to be granted a change of nonimmigrant status under the plain language of 8 C.F.R. § 214.2(f)(5)(i).

24. 8 C.F.R. § 214.2(f)(5) is nothing if not unambiguous. It is the date on Mr. Nedelovski's Form I-20, and not in the SEVIS database, that dictates his program start date for determining whether he was maintaining status up to 30 days before that date and so eligible to change his nonimmigrant status.

25. The USCIS's decision of May 28, 2016 denying Mr. Nedelovski's application

for change of nonimmigrant status because his nonimmigrant status expired more than 30 days before his SEVIS program date of May 2, 2016 was not in accordance with law because there is simply no requirement that an applicant for a change of nonimmigrant status be maintaining a lawful nonimmigrant status within 30 days on the program start date contained in his "SEVIS record", and any such purported requirement is directly contrary to the plain language of 8 C.F.R. § 214.2(f)(5)(i).

26. Accordingly, the USCIS's decision of May 28, 2016, denying Mr. Nedelkovski's change of nonimmigrant status to F-1 and his wife, and children's change of nonimmigrant status to F-2, was not in accordance with law and should be held unlawful and set aside by this Court.

27. WHEREFORE the plaintiffs request that this Court finds that the USCIS's decision in File No. WAC1690207635, dated May 28, 2016, to be unlawful, and set it aside, as not in accordance with law, and direct the USCIS to issue a new decision in accordance with its applicable regulations and other law.

## COUNT II

28. USCIS made what appears to be an agency-wide decision sometime in the beginning of 2016 to disregard the plain language of 8 C.F.R. § 214.2(f)(5)(i) which provides that "(a)n F-1 student may be admitted for a period up to 30 days before

the indicated report date or program start date listed on Form I-20 ...” and instead interpret it to say “(a)n F-1 student may be admitted for a period up to 30 days before the indicated report date or program start date listed in SEVIS” (emphasis supplied).

29. The USCIS had previously interpreted this regulatory language according to its actual wording since its promulgation on December 11, 2002.

30. For example, pronouncements from both the USCIS’s Vermont Service Center (VSC) and the California Service Center (CSC) from prior to 2016 confirm that adjudicators would previously rely on the initial program start date on the I-20 when adjudicating a change of status to the F-1 application where the program start date was deferred. The minutes (on USCIS letterhead) from August 20, 2009, VSC stakeholder meeting include the following Question and Answer:

a. Under SEVP policy, a school is instructed to defer the program start date in SEVIS if it appears the change of status will not be approved before the program start date as originally set. NAFSA would like to confirm that the change of status application remains approvable after subsequent deferrals of the start date in SEVIS pursuant to this SEVP policy, provided the applicant’s immigration status at the time of filing was valid to at least 30 days before the program start date on the I-20 initially submitted in support of the application for change of status. Response: If

otherwise approvable, a change of status will remain approvable regardless of subsequent deferrals of the program start date provided that the applicant's status at the time of filing was within at least 30 days of the program start date indicated on the initial I-20.

31. In addition, minutes (on USCIS letterhead) from the May 6, 2009, CSC stakeholder meeting state:

This is a follow-up item to Question 9 from our General Meeting on February 25, 2009. We asked whether the start date of the course of study as indicated on the Form 1-20 must be on or before the expiration of the current status (i.e. B-2) and CSC responded that the start date of the course should be on or before the expiration of status. The regulations at 8 CFR §214.2(f)(5)(i), defining "duration of status" state "An F-I student may be admitted for a period up to 30 days before the indicated report date or program start date listed on Form1- 20." AILA urges CSC to reconsider its answer, and to conclude that, consistent with the 30- day window provided by 8 CFR §214.2(f)(5)(i), a change of status to F-1 may be approved where the intended start date for the course of studies will commence no more than 30 days after the expiration of the period of authorized stay held by the alien at the time of the filing of the request to change nonimmigrant status. (Emphasis added). Response: If the requested start date is within 30 days of the previous status expiration date, this would not be cause for denial of the application.

32. Finally, the American Immigration Lawyers Association (AILA) (the nation's largest association of immigration lawyers) has stated that regarding changes of status to F-1 due solely to changes in the program start date in SEVIS, that:

a. Prior to the spring of 2016, AILA received no reports from members who had received denials of this nature. After receiving initial reports of denials in spring 2016, AILA posted a "call for case examples" to the general membership. We received more than 100 cases in response, the earliest of which had been denied in February 2016. This response, along with the above minutes, clearly indicates a shift in policy.

33. At no time has the USCIS made a public announcement of this change of policy.

34. Therefore even in the unlikely event that the USCIS's rewriting of the plain language of 8 C.F.R. § 214.2(f)(5)(i) was somehow a reasonable interpretation of the same, it is unenforceable against the plaintiffs because USCIS failed to notify them with ascertainable certainty under what circumstances they must extend their nonimmigrant status while an application for change of nonimmigrant status to F-1 is pending.

35. No noncitizen could be expected to read the plain language of 8 C.F.R. § 214.2(f)(5)(i) and understand that it was not enough that he maintain a valid status to within 30 days of their program start date on form I-20, but that he was instead required to maintain a valid nonimmigrant status until within 30 days of the program start date in "SEVIS", particularly when he wasn't aware even that their SEVIS program start date was being changed by his university, even though this was derogatory information which the USCIS was required to inform him of prior to making a decision, and also in light of the USCIS's over decade long history of enforcing the regulation as it was written, which only silently changed after his application was filed. See, e.g. GE Co. v. OSHRC, 583 F.2d 61, 67-68 (2d Cir. 1978) ("Simply put, to apply this standard to the surface here in question would go too far it would be inconsistent with the wording of the standard and it would create considerable doubt that the standard provides to employers fair warning of the conduct which it prohibits or requires."), Phelps Dodge Corp. v. Federal Mine Safety and Health Review Comm'n, 681 F.2d 1189, 1192 (9th Cir. 1982) (recognizing that "the application of a regulation in a

particular situation may be challenged on the ground that it does not give fair warning that the allegedly violative conduct was prohibited"); Kropp Forge Co. v. Secretary of Labor, 657 F.2d 119, 122 (7th Cir. 1981) (refusing to impose sanctions where standard the regulated party allegedly violated "d[id] not provide 'fair warning' of what is required or prohibited"); Dravo Corp. v. Occupational Safety and Health Review Comm'n, 613 F.2d 1227, 1232-1233 (3rd Cir. 1980) (rejecting agency's expansive interpretation where the agency did not "state with what is meant by the standards [it] ha[d] promulgated" (internal quotation marks omitted; emphasis deleted)).

36. Plaintiffs were prejudiced by this sudden and unannounced change of policy since had they known that USCIS read the words "on form I-20" in 8 C.F.R. § 214.2(f)(5)(i) to mean "in SEVIS" they could and would have applied to extend their visitor's status while their applications for change of nonimmigrant status were pending.

37. 44. Furthermore, the USCIS's radical new interpretation of 8 C.F.R.

§ 214.2(f)(5)(i) is in any event not enforceable against the plaintiffs retroactively because 1) this case is not one of the first impression, (the first denials on this ground having apparently been issued in February 2016); 2) The new rule represents an abrupt departure from well-established practice and not merely an attempt to fill a void; (3)

38. the plaintiffs heavily relied upon the former rule by not extending their visitor status while their change of nonimmigrant status was pending in reliance upon the plain language of 8 C.F.R. § 214.2(f)(5)(i); (4) retroactive enforcement of this changed interpretation would heavily burden the plaintiffs in that it would result in a denial of their application for change of nonimmigrant status after their current status expired, making it virtually impossible for them to obtain a legal status in the U.S., and most likely also make it impossible for them to obtain a visa in the future since they are now in violation of their status; and (5) the defendant has no statutory interest in applying its new interpretation despite the reliance of the plaintiffs on the old standard. New York Telephone Co. v. FCC, 631 F.2d 1059, 1068 (2d Cir. 1980) (quoting Retail, Wholesale &

Department Store Union v. NLRB, 466 F.2d at 380, 390 (D.C. Cir. 1972)).

39. Wherefore the Court should hold that the USCIS did not act in accordance with law by retroactively enforcing upon plaintiffs a radically new interpretation of 8 C.F.R. § 214.2(f)(5)(i) which cannot be reasonably ascertained to mean that they were required to file their applications for change of nonimmigrant status within 30 days of a program start date in their SEVIS record that hadn't even been finally determined yet and directly at odds with its plain language without any notice after approximately 13 years of enforcing the regulation according to its plain and unambiguous meaning.

## COUNT III

40. 8 C.F.R. § 248.1(b) provides that:

Timely filing and maintenance of status. Except in the case of an alien applying to obtain V nonimmigrant status in the United States under § 214.15(f) of this chapter, a change of status may not be approved for an alien who failed to maintain the previously accorded status or whose status expired before the application or petition was filed, except that failure to file before the period of previously authorized status expired may be excused in the discretion of USCIS, and without separate

application, where it is demonstrated at the time of filing that:

(1) The failure to file a timely application was due to extraordinary circumstances beyond the control of the applicant or petitioner, and USCIS finds the delay commensurate with the circumstances;

(2) The alien has not otherwise violated his or her nonimmigrant status;

(3) The alien remains a bona fide nonimmigrant; and

(4) The alien is not the subject of removal proceedings under 8 CFR part 240.

41. Even if his program start date were determined by the SEVIS program, which the regulations nowhere provide it is, and not his Form I-20, as is unambiguously provided in 8 C.F.R. § 214.2(f)(5)(i), nevertheless, the USCIS had the discretion under 8 C.F.R. § 248.1(b) to grant Mr. Nedelovski a change of nonimmigrant status.

42. Although Mr. Nedelovski could, in fact, have applied for an extension of his visitor’s status, had he known that the USCIS had changed its interpretation of 8 C.F.R. § 214.2(f)(5) to require that he maintain a nonimmigrant status to within 30 days of his program start date in SEVIS, he was unaware of such a requirement due to the USCIS’s failure to publicize that it was now interpreting the regulation to require that he maintain status to that date.

43.Therefore, if he did have a duty to continue to maintain status until within 30

days of his SEVIS program start date, he was unable to do so due to circumstances beyond his control, namely his ignorance of the fact that USCIS policy now required this.

44. Accordingly, if despite the facts and law set forth above, this Court holds that the plaintiffs had a duty to maintain a lawful nonimmigrant status until the program start date set forth in SEVIS, as changed after their application for change of nonimmigrant status was filed, then this Court should remand this matter to USCIS to consider, in its discretion, whether plaintiffs should be granted a change of status to F-1 and F-2, respectively, despite their failure to maintain status until the SEVIS program start date. Youseffi v. Renaud, 794 F. Supp. 2d 585, 594 (D. Md. 2011) ("it is apparent from the language and structure of section 248.1(b) that the Secretary of Homeland Security has discretion, in appropriate cases, to excuse change-of-status applicants who file while their prior status is valid, but subsequently fall out of status. Because this Court only has the authority to address the agency's regulatory interpretations relating to eligibility, the case will be remanded to the USCIS for further proceedings consistent with the eligibility principles articulated in this opinion.").

WHEREFORE the plaintiffs request that in the event that this Court does not grant them the relief sought in Counts I and II of this complaint, that it find that the USCIS's decision in File No WAC1690207635, dated May 28, 2016, to be

unlawful, and set it aside, as an abuse of discretion, and remand this matter back to the USCIS for further proceedings consistent with the eligibility principles articulated in Count III of this complaint and by the court in Youseffi v. Renaud.

Respectfully submitted, this day of 24 May, 2017

/s/ *Michael E. Piston*

Michael E. Piston
MI 002
Attorney at Law
225 Broadway,
Suite 307
New York, NY, 10007
Ph: 646-845-9895
Fax: 206-770-6350
Email: michaelpiston4@gmail.com